UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON-REA JORDAN, individually and as next friend of D.M., a minor,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.:  15-CV-1199-BEN-NLS<br><br>**ORDER GRANTING MOTION TO APPROVE MINOR'S COMPROMISE**<br><br>**[ECF No. 63]** |

## I. INTRODUCTION

This matter has been referred to the undersigned for the limited purpose of the approval of the minor's compromise, after the parties settled the matter during a Mandatory Settlement Conference before the Honorable Nita L. Stormes. Having considered the moving papers, all documents lodged directly with the Court, and the information provided at the hearing held on November 29, 2017, the Court finds the settlement is fair, reasonable, and in the best interest of the minor. Accordingly, Plaintiff's unopposed motion is **GRANTED**.

/ / /

/ / /

/ / /

## II. BACKGROUND

### A. Factual Allegations[1]

Plaintiff Madison-Rea Jordan filed a Second Amended Complaint ("SAC") in 2016, on behalf of herself and as next friend of D.M., a minor, alleging that in May 2013, D.M. was negligently treated at Naval Hospital Camp Pendleton ("NHCP") and Naval Medical Center San Diego ("NMCSD").[2] On May 4, 2013, 3 year-old D.M. sought treatment at NHCP for "flu-like symptoms, headache, and fever." (SAC, ECF No. 40 at ¶ 19.) Despite showing "no acute distress," the attending physician suspected meningitis. (*Id*. at ¶¶ 20-21.) The attending physician performed a lumbar puncture on D.M. without the use of sedatives or a local anesthetic, causing D.M. to "struggle[] and scream[]" throughout the procedure. (*Id*. at ¶ 23.)

"Following the lumbar puncture, D.M. began vomiting, experienced increased headache pain, and complained of back pain and weakness in his legs." (*Id*. at ¶ 26.) D.M.'s condition deteriorated over the following days. Despite D.M.'s progressively worsening condition, further diagnostic testing was delayed until May 6, 2013. (*Id*. at ¶¶ 30-31.) D.M. was transferred to NMCSD where an MRI of his brain and spinal cord revealed a "subarachnoid hemorrhage" in the lumbar spine, causing a compression of the spinal cord. (*Id*. at ¶ 34.) D.M. was transferred into surgery immediately thereafter for an emergency laminectomy. (*Id*. at ¶ 36.) D.M. was discharged on May 16, 2013. (*Id*. at ¶ 35.)

Plaintiffs allege that, as a result of Defendant's negligence, D.M. suffered severe and permanent physical injuries during the lumbar puncture. Plaintiffs bring three causes of action in connection with alleged injuries: (1) negligent performance of a lumbar puncture on D.M.; (2) negligent failure to diagnose the sequel of the negligent lumbar puncture on D.M.; and (3) the negligent infliction of emotional distress on Jordan. All allegations are made pursuant to the Federal Tort Claims Act.

---

[1] The factual allegations herein are for background purposes only.
[2] The case was originally filed on May 29, 2015. (*See* ECF No. 1.)

As a result of the allegedly negligent and unnecessary lumbar puncture, D.M. suffers from cauda equina syndrome, which involves the inability to control the bladder and bowels, likely sexual dysfunction, gait disturbances, and associated pain. (P&A, ECF No. 63-1 at ¶ 8.)

**B. The Proposed Settlement And Distribution Breakdown**

The parties came to a settlement of $3,000,000, with the assistance of Judge Stormes. The $3,000,000 settlement funds will be apportioned as follows:

(1) $1,700,000 is designated "Upfront Cash" that will be used to pay attorney's fees and costs, settle a Medi-Cal lien and a lump sum to Jordan. Attorney's fees are statutorily capped at 25% of the total settlement proceeds, amounting to $750,000. *See* 28 U.S.C. § 2678. Plaintiffs assert the cost of litigation to date amounts to $250,334.06. The Medi-Cal lien to be deducted from the Upfront Cash is $44,027.36. Plaintiff Jordan shall receive a lump sum payment of $100,000;

(2) $1,100,000 will be used by Defendant to purchase an annuity intended to pay out $1,625.85 per month to a reversionary trust, increasing 3% per year, totaling $4,203,346.78 in payments over D.M.'s projected lifetime;

(3) $200,000 will seed the reversionary trust;

(4) Any remaining funds will be deposited into a special needs trust. The special needs trust will have no reversionary interest to Defendant.

(P&A at ¶ 24 – 25.)

Pursuant to Local Civil Rule 17.1(b)(1), any funds recovered by a minor must be paid and distributed in accordance with California Probate Code §§ 3600 *et seq*.

**III. LEGAL STANDARD**

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), "to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to "conduct its own inquiry to

determine whether the settlement serves the best interests of the minor." *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

The Ninth Circuit has also made clear that, in cases involving the settlement of federal claims, district courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable in light of the facts of the case, the minor's specific claim, and recovery in similar cases," and should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for the adult co-plaintiffs or plaintiffs' counsel - whose interests the district court has no special duty to safeguard." *Robidoux*, 638 F.3d at 1181-82 (citing *Dacany*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.* at 1182.

## IV. ANALYSIS

### A. Approval Of Settlement

In light of the facts of the case, the claims brought, and recoveries by similarly situated plaintiffs, the settlement sum to D.M. is fair, reasonable, proper, and in the best interest of the minor.

Pursuant to the settlement, D.M. will receive $1,852,838.58.[3] This amount is reasonable "in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. D.M. has suffered severe injuries as a result

---

[3] This sum includes the seed money for the reversionary trust, the money used to purchase the annuity for the reversionary trust, and the remainder of funds left in the Upfront Cash minus attorney's fees, costs, and Jordan's settlement funds.

of the alleged negligence: he has bowel and bladder control problems, gait disturbances, associated pain, and likely sexual dysfunction. As a result of these injuries, D.M. will required ongoing medical care throughout his life. In light of these injuries, a settlement amount over $1 million is fair and reasonable.[4]

That the amount is reasonable is confirmed by the litigation and settlement process. The amount was set as the result of mediation that occurred after extensive discovery. The parties propounded substantial written discovery, Plaintiff deposed four Defendant medical providers, and Defendant deposed Plaintiff Jordan. (P&A at ¶¶ 9-11.) The parties deposed 17 of the 19 designated expert witnesses and D.M. was examined by six expert witnesses in the fields of pediatric neurology, physical medicine and rehabilitation, and vocational rehabilitation. (*Id*. at ¶¶ 12-15.) The extensive discovery completed during the litigation process revealed the parties had disagreement on the injuries sustained and the appropriate damages calculations. Should the matter have gone to trial, Plaintiffs were faced with a range of a take-nothing judgment to a $20,251,000 judgment based on expert analysis. (*Id*. at ¶¶ 17, 19.)

Plaintiffs' economist found the present value of D.M.'s future needs and lost earnings amounts to be $20,521,000. Defendant's economist valued D.M.'s future needs at a range of $74,218 to $580,901 and lost earnings at $4,924. (*Id*. at ¶ 20.) This amounts to a cumulative range of $79,142 to $585,825. However, when Defendant's economist uses the testimony of Plaintiffs' economist to calculate D.M.'s future needs and lost earnings, the analysis increases significantly, to $3,191,878 and $426,719, respectively. (*Id*.) Thus, the settlement reached, in light of the wide range of damages and risks at trial, is fair and reasonable.

Lastly, the Honorable Roger T. Benitez appointed Amy Rose Martel, a disinterested attorney, as the settlement *guardian ad litem* for D.M. (ECF No. 59.) On November 8,

---

[4] *See*, *e.g.*, *A.M.L., et al. v. Cernaianu*, et al., 2014 WL 125889922, *5 (C.D. Cal. 2014) (finding a settlement over $1 million to be reasonable where a minor was injured and required lifetime medical care);

2017, Ms. Martel filed her report on the matter. (ECF No. 64.) In her report, Ms. Martel explains that she has significant experience in cases similar to the matter at bar, offering more than ten years of pertinent experience. (*Id*. at ¶ 1.) Based on Ms. Martel's background, training, and experience, and after a thorough review of the record, Ms. Martel recommends the Court grant the motion in its entirety, finding the settlement to be fair and reasonable.[5] (*Id*. at ¶ 18.)

For the reasons set forth above, the Court concludes the settlement is fair and reasonable in light of the standard set forth in *Robidoux* and **GRANTS** the motion to approve the settlement.

**B. Special Needs Trust**

Plaintiffs seek an order approving placement of the settlement proceeds into a special needs trust. Pursuant to California Probate Code § 3604, "[i]f a court makes an order … that money of a minor person with a disability be paid to a special needs trust, the terms of the trust shall be reviewed and approved by the court and shall satisfy the requirements of this section." Section 3604(b) provides that

> (b) A special needs trust may be established and continued under this section only if the court determines all of the following:
> (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
> (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust.
> (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

---

[5] Ms. Martel's fees and costs in examining the matter amount to $2,800. The Court finds this to be reasonable. These fees shall be apportioned from the $250,334.06 set for fees and costs. *See Gaddis v. United States*, 381 F.3d 444, 455-57 (5th Cir. 2004) (en banc) (finding courts may tax *guardian ad litem* fees as costs in Federal Tort Claims Act actions); *United States v. Ruger, Model 223 Mini Rifle, Serial No. 18492495*, 2009 WL 2591145, *3 (W.D.N.C. 2009) (finding that court appointed *guardian ad litem* fees are properly taxed as costs).

1  Cal. Prob. Code § 3604(b)(1)-(3).

2       The Court finds that D.M. has a disability that substantially impairs his ability to
3  provide for his own care and constitutes a substantial handicap. The Court further finds
4  that D.M. is likely to have special needs that will not be met without the trust and the money
5  paid to the trust does not exceed the amount necessary to meet D.M.'s needs. The Court's
6  findings are rooted in the expert reports provided by Plaintiff's counsel at the November
7  29, 2017 hearing. These reports indicate that D.M. requires aid throughout the day for even
8  the most basic activities, including walking, and bowel and bladder functions. Moreover,
9  D.M.'s mother offered extensive testimony regarding the constant care D.M. requires that
10 further persuaded the Court that D.M. indeed suffers from a substantial disability and that
11 D.M is unable to provide for his own care. Lastly, the expert reports clearly demonstrate
12 D.M. will have special needs for the remainder of his life which will not be met without
13 the trust and the trust will reasonably meet these special needs.

14      For these reasons, Plaintiffs' request to approve the placement of certain settlement
15 funds, as described above, into a special needs trust is **GRANTED**.

16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the unopposed motion to approve the minor's compromise. It is further **ORDERED** that:

(1) No bond is necessary for the establishment of either trust;

(2) The first accounting for the trusts shall be filed with a court of competent jurisdiction within one year of the establishment of the trust;

(3) Plaintiff shall satisfy all liens prior to the establishment of the trusts; and

(4) A copy of the executed trust agreements (redacted to protect D.M.'s identity) shall be filed with the Court prior to the distribution of the trust.

The Court makes no specific finding or order with respect to whether the special needs trust for the benefit of D.M. satisfies or complies with applicable federal laws or regulations.

**IT IS SO ORDERED**.

Dated: January 10, 2018

Hon. William V. Gallo
United States Magistrate Judge